EVELYN HERNÁIZ, demandante y recurrente, *v.* JOSÉ ESTEBAN GONZÁLEZ e ISABEL SANTIAGO DE GONZÁLEZ, demandados y recurridos.

*Número:* R-65-22     *Resuelto:* 23 de diciembre de 1966

*Jiménez, Valdés & Irizarry,* abogados de la recurrente.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

PER CURIAM: Se trata de una demanda para que se transfiera a la recurrente, Evelyn Hernáiz, la custodia de su sobrina María Eugenia Hernáiz, de seis años de edad, cuya custodia provisional había sido concedida por la División de Bienestar Público a los esposos recurridos, Juan Esteban González e Isabel Santiago de González.

Las partes estipularon que la niña está siendo bien tratada y cuidada por los recurridos. El juez de instancia concluyó que éstos le han estado dando a María Eugenia toda la atención, cuido, alimentos y vestuario necesarios y la tratan como su propia hija sin diferenciarla en cuanto a su cuido y atención de sus propios hijos, al extremo que la niña se ha

adaptado por completo al hogar de los recurridos y se refiere a ellos como sus padres.

Del informe de las trabajadoras sociales([1]) copia el juez de instancia en sus conclusiones lo siguiente: "La niña se ve rodeada de personas que la quieren y la miman. Es el centro de atracción del grupo familiar. Llama a los esposos Santiago González 'papi y mami' y a los hijos de éstos sus hermanitos. La menor se observa temorosa por los incidentes surgidos en relación a ella. En entrevista sostenida con ella indicó no querer a su tía . . . manifestó que prefería quedarse con sus papás y sus hermanitos."

Concluyó el juez de instancia que Evelyn Hernáiz es una mujer sola que vivía en Nueva York; que con el fin de hacerse cargo de unos sobrinos colocados por Bienestar Público en un hogar de crianza, se propone establecer un hogar en Puerto Rico; que reside en la actualidad en casa de una amiga en el Caserío de Puerta de Tierra; y que para la fecha en que se dictó la sentencia del tribunal de instancia no tenía empleo permanente pues cursaba en una fábrica de ropa un período de aprendizaje, con un máximo de salario de $28 semanales.

Concluyó el tribunal de instancia que como no existe disposición de ley disponiendo una orden de prelación en cuanto a quién corresponda la custodia de un menor luego del fallecimiento de su padre y de su madre, corresponde al tribunal, en el ejercicio de su poder de *parens patriae* determinar la cuestión, atendiendo primordialmente el bienestar y felicidad de dicha menor; que al sacar a María Eugenia del ambiente de buenas y efectivas relaciones famillares en que vive para llevarla a vivir a otro sitio, aun con una tía materna, habrá de crear en la niña un trauma emocional que indudablemente tendría consecuencias perjudiciales en su desarrollo y formación.

_____

([1]) Las partes estipularon que se sometiera el caso a la Oficina de Bienestar Público para que, previa la investigación correspondiente, rindiera un informe al Tribunal.

Aduce la recurrente que el tribunal de instancia incurrió en error (1) al determinar que la recurrente no tiene derecho a la custodia de María Eugenia porque no existe disposición en derecho que establezca un orden de prelación en la patria potestad al faltar los padres de un niño; (2) al ejercer su poder de *parens patriae;* y (3) al imponer a la recurrente el peso de la prueba en cuanto si le convenía o no a la menor estar bajo su custodia.

No se cometieron los errores apuntados. Esencialmente, la recurrente basa sus apuntamientos en lo dispuesto en la Sec. 10 (d) (2) de la Ley de Bienestar Público de Puerto Rico (8 L.P.R.A. sec. 10 (d) ) (²). Insiste en que esta disposición provee una prelación en cuanto a quiénes tienen derecho a la custodia de un menor que está bajo la custodia de la División de Bienestar Público. No tiene razón. Dicha ley sólo dispone que la mencionada División retendrá la custodia y dirección de cada niño hasta que éste sea devuelto a sus padres, a sus parientes, o puesto en libertad o sea adoptado o puesto por una Sala de jurisdicción competente bajo otra custodia o dirección. La disposición en cuestión no fija una prelación mandatoria en cuanto a quién tiene derecho a la custodia del niño cuando cesa la patria potestad por falta de los padres. Es potestativo del Tribunal Superior el disponer sobre la custodia del niño en una de las formas y concederla a una de las personas enumeradas en esta ley, dentro de un sano y juicioso ejercicio del poder de *parens patriae* de que goza el tribunal. Esta facultad debe ejercitarse, como se ejercitó en este caso por el tribunal de instancia, de manera

(²) La Sec. 10 (d) (2) de la Ley de Bienestar Público dispone que:

". . . la División desempeñará las funciones de bienestar público . . . siguientes:

"2. . . . Aceptar niños dependientes o abandonados, puestos bajo su custodia por el Tribunal Superior. . . . La División retendrá la custodia y la dirección de cada niño que reciba hasta que sea éste devuelto a sus padres o a uno de ellos; a sus parientes; puesto en libertad por no necesitar ayuda por más tiempo; adoptado o puesto por una Sala de jurisdicción competente bajo otra custodia o dirección . . . ."

que se conceda la custodia del niño en la forma y a la persona que le sea más conveniente y beneficiosa al menor. Es esencial que tal custodia provea para su bienestar y desarrollo. *Muñoz v. Torres*, 75 D.P.R. 507 (1953); *Guijarro v. Lluberas*, 58 D.P.R. 464 (1941); *Chardón v. Corte*, 45 D.P.R. 621 (1933). No se nos ha mostrado circunstancia alguna indicativa de que la actual custodia de María Eugenia deba cesar por serle perjudicial, inconveniente o no proveer adecuadamente para su bienestar y desarrollo. Se aceptó por la recurrente, por el contrario, que la niña es feliz en el hogar en que ahora vive y que allí la tratan, la quieren y la cuidan bien, como otro miembro de la familia. No aparece en el récord prueba alguna de que la recurrente pueda mejorar esta situación fuera de su expresado cariño de tía y de que ésta se propone crearle un hogar junto a sus otros cinco hermanos de sangre. Es de notar, sin embargo, que esto no pasa de ser expresión de un buen deseo, pues la recurrente no tiene un hogar constituido todavía. No aparece claro cómo es que va a cuidar de seis niños cuando la recurrente tiene que salir a trabajar a una fábrica para poder proveer todo lo que su hogar necesita, alimentos, vestuario, medicinas y otras necesidades incidentales. No indica quién cuidará de los niños, quién supervisará sus actuaciones, quién los atenderá y les preparará sus alimentos a sus horas, mientras la recurrente trabaja fuera del hogar. Convenimos con el juez de instancia que en estas circunstancias, era más juicioso no alterar el buen estado de situación de la niña en cuestión.

▮ Como se trata de una custodia provisional, no ha de entenderse que lo aquí dispuesto juzga definitivamente el derecho de la recurrente, cuando las circunstancias así lo justifiquen, a tener la custodia de la niña en cuestión, debiéndose tomar en consideración al considerarse ése o cualquier otro cambio de la referida custodia, entre otros factores pertinentes, lo deseable que puede ser para la niña el que

crezca junto a sus otros hermanos consanguíneos en el hogar apropiado y acogedor que le pueda proporcionar su tía, la recurrente en este caso.

*Por los motivos indicados, se confirmará la sentencia dictada en este caso.*